Argued and submitted March 12,
affirmed April 14, reconsideration denied May 22,
petition for review denied July 17, 1980 (289 Or 373)

In the Matter of the Compensation of
LUNDY,
*Petitioner,*

*v.*

BORDON CHEMICAL COMPANY,
*Respondent.*

(No. 78-5797, CA 15987)

609 P2d 1307

Thomas A. Huntsberger, Springfield, argued the cause for petitioner. With him on the brief was Ackerman & DeWenter, Springfield.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts and Roger A. Luedtke, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this Workers' Compensation case is whether the claimant's overtime hours should be included in computing his temporary total disability payments. The referee held that claimant's overtime work should be included in determining his daily wage. ORS 656.210, *infra.* The Workers' Compensation Board reversed. We affirm the Board.

This case was tried on stipulated facts. As the Board stressed, the parties agreed that "overtime that was *regular* and *required* by Borden Chemical Company should be included in the computation of [claimant's] daily wage for the purpose of determining temporary total disability compensation." (Emphasis added). *See* ORS 656.210(2).

Claimant's overtime work was "required." The parties stipulated that, during the period preceding claimant's injury, he had to work overtime when the employe who filled claimant's job on the next shift "was not available to begin work at the start of the * * * shift."

The determinative question, then, is whether the overtime was "regular." The referee and the Board differed in their approaches to this problem.

While the parties stipulated that overtime had to be "regular" to be included, they did not define that term. Since the parties had not defined "regular," the referee looked to the temporary total disability statute, ORS 656.210, which provides that "* * * 'regularly employed' means actual employment or availability for such employment." The referee concluded that, under ORS 656.210, "regular" means "actual." He reasoned that "[s]ince the claimant worked the hours, [the overtime] was was 'actual employment,' even though it was erratic." The referee then computed the claimant's daily wage by averaging "a reasonable statistical sample of [claimant's pre-injury overtime] work history."

We disagree with the referee's approach. We do not need to decide whether the referee's reading of ORS 656.210 was accurate because we find that the referee's use of the statute in his interpretation of the parties' stipulation was inappropriate.

The parties agreed that, to be included in the computation of TTD, overtime had to be "regular." The parties did not stipulate that "regular" should be defined with reference to ORS 656.210.[1] The parties' agreement that overtime should be "regular" and "required" is not drawn in the language of the statute. The statute does not define "regular"; rather, it assigns a specific meaning to "regularly employed." The statute uses "regularly employed" only with reference to the number of days that a worker "regularly" works per week.

We find that "regular," as used in the stipulation, is not a cross-reference to "regularly employed," as that

[1] ORS 656.210 provides, in part, that:

"(1) When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. Notwithstanding the limitation imposed by this subsection, an injured worker who is not otherwise eligible to receive an increase in benefits for the fiscal year in which compensation is paid shall have his benefits increased each fiscal year by the percentage which the applicable average weekly wage has increased since the previous fiscal year.

"(2) For the purpose of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving at the time of his injury:

"(a) By 3, if the worker was regularly employed not more than three days a week.

"(b) By 4, if the worker was regularly employed four days a week.

"(c) By 5, if the worker was regularly employed five days a week.

"(d) By 6, if the worker was regularly employed six days a week.

"(e) By 7, if the worker was regularly employed seven days a week.

"As used in this subsection, 'reguarly employed' means actual employment or availability for such employment.

" * * * *"

term is defined in ORS 656.210(2). The referee's interpretation of the parties' stipulation by resorting to the statute therefore amounts to ignoring the stipulation. The parties tried this case pursuant to their stipulation. They should not be permitted to abandon the stipulation on appeal. *See Leiser v. Sparkman,* 281 Or 119, 573 P2d 1247 (1978).

The parties use of the term "regular," without any special definition, indicates that the parties intended that "regular" have its normal meaning. It is not a term of art in Workers' Compensation law. If the parties had wanted regular to have some particular, unique meaning, they would have defined it in the stipulation.

"Regular" is synonymous with "normal" or "typical." The term implies conformity to some standard, or to an established pattern. Webster's Third New International Dictionary (1976).

Both the referee and the Board described claimant's overtime as "erratic." The parties' stipulation as to the amount of overtime claimant worked during the period preceding his injury is set out in the margin.[2]

---

[2] The claimant was injured on September 1, 1976. The parties agreed that, during the 45 working days before the injury, when claimant worked on the day shift in employer's shipping and receiving department, he worked the following straight time and overtime hours:

| TIME PERIOD | REG. HOURS | OT HOURS (Overtime hours) | DT HOURS (Double time hours) |
|---|---|---|---|
| 7/1-2/76 | 16 | | |
| 7/3-11/76 | 38 | | |
| 7/12-18/76 | 40 | | |
| 7/19-25/76 | 40 | | |
| 7/26/76-8/1/76 | 39 | 4 | 2 |
| 8/2-8/76 | 40 | 2 | |
| 8/9-15/76 | 40 | | |
| 8/16-22/76 | 38 | .25 | |
| 8/23-29/76 | 37 | 1 | |
| 8/30/76-9/1/76 | 24 | 8 | 3 |
| | 352 | 15.25 | 5 |

On appeal, claimant questions whether the 45 working day period, preceding the injury, is the correct time period for computing the rate of his

The claimant's overtime hours varied, and followed no pattern. During some weeks, the claimant worked no overtime. During other weeks, he worked minimal to substantial amounts of overtime. The Board concluded that claimant's overtime work was irregular and unpredictable.

We agree. This "erratic" pattern of overtime is not "regular." The parties agreed that, to be included in determining the rate of TTD payments, overtime had to be regular. The claimant failed to prove that his overtime work fit within this stipulated test.[3]

Affirmed.

---

TTD payments. Before the 45 day period, claimant worked in another department, at another job. Claimant asks us to consider the entire year prior to his injury in computing TTD.

We need not resolve this issue. The claimant has not established that his overtime work was "regular." In his brief, claimant does not ask us to examine the year prior to the injury to determine if the overtime was "regular."

[3] We express no opinion as to whether, absent the stipulation, we would reach the same result in construing the applicable statutes.